```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
ZUFFA, LLC,

                     Plaintiff,            REPORT AND
                                           RECOMMENDATION
        -against-                          22 CV 1892 (RPK)(RML)

PATRICIA BOHMAN, Individually, and
as officer, director, shareholder and/or
principal of C P GRILL CORP, and
C P GRILL CORP.,

                     Defendants.
--------------------------------------------------X
```

LEVY, United States Magistrate Judge:

By order dated June 28, 2022, the Honorable Rachel P. Kovner, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted in part and denied in part.

## BACKGROUND AND FACTS

Plaintiff Zuffa, LLC d/b/a Ultimate Fighting Championship ("plaintiff") filed this action against defendants C P Grill Corp. ("C P Grill") and Patricia Bohman ("Bohman"), individually and as officer, director, shareholder and/or principal of C P Grill Corp. ("defendants") on April 4, 2022, alleging violation of the Copyright Act, 17 U.S.C. § 501. (Complaint, dated Apr. 4, 2022 ("Compl."), Dkt. No. 1.) Plaintiff has demonstrated that both defendants were properly served with the summons and complaint. (See Affidavit of Service of James Perone, sworn to Apr. 11, 2022, Dkt. No. 8; Affidavit of Service of Steeve F. Louis, sworn to Apr. 21, 2022, Dkt. No. 9.) Despite proper service, defendants have not appeared or otherwise defended this action. (See Request for Certificate of Default, filed May 17, 2022, Dkt.

No. 10.) On May 20, 2022, the Clerk of the Court noted defendants' default. (See Clerk's Entry of Default, dated May 20, 2022, Dkt. No. 11.)

On June 27, 2022, plaintiff moved for default judgment. (See Motion for Default Judgment, dated June 27, 2022 ("Pl.'s Mot."), Dkt. No. 12.) On June 28, 2022, Judge Kovner referred plaintiff's motion to me for report and recommendation. Plaintiff seeks a default judgment on claims under the Copyright Act and seeks (1) statutory damages pursuant to 17 U.S.C. § 504(c)(1); and (2) enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2). (Id. at 7-12.)

Plaintiff, a Nevada limited liability company, alleges that it is the owner and copyright holder of the UFC 247 Jones vs. Reyes Event, including all undercard matches, scheduled for February 8, 2020[1] (the "Program") and, therefore, holds the rights of performance to the Program and licensing to commercial establishments. (Compl. ¶¶ 1, 3, 29; Affidavit of Riché McKnight, Esq. in Support of Motion for Default Judgment, sworn to June 22, 2022 ("Pl.'s Aff."), Dkt. No. 12-3, ¶ 3.) Plaintiff asserts that the Program "originated via satellite uplink and was subsequently re-transmitted via encrypted satellite, cable and IPTV/ streaming signal[.]" (Compl. ¶ 3.) It was also registered with the United States Copyright Office and was given Copyright Registration Number PA 2-232-758. (Id. ¶ 4). According to the complaint, commercial establishments were required to buy a license and contract with plaintiff for authorized lawful authority to broadcast the Program to its patrons or the public. (Pl.'s Aff. ¶ 4.)

---

[1] The complaint alleges that the Program took place on March 6, 2021, but this appears to be a typographical error. The actual date of the Program was February 8, 2020, based on the Copyright Certificate, social media posts, and plaintiff's assertions in its Motion for Default Judgment. (See Pl.'s Mot. at 2-3, Exs. A, B); see also FAT Brands Inc. v. PPMT Cap. Advisors, Ltd., No. 19 CV 10497, 2021 WL 37709, at *2 (S.D.N.Y. Jan. 1, 2021) (accepting typographical error of an alleged date in complaint without requiring party to amend).

2

The license fee is determined "based upon the size of the establishment and its fire code occupancy." (Id. ¶ 5) (citing "Rate Card," annexed as Ex. A to Pl.'s Aff.) Plaintiff states that an establishment like C P Grill, with an estimated occupancy of up to fifty patrons, would have had to pay a sublicensing fee of $866 to broadcast the Program. (Id.)

C P Grill is a commercial establishment located at 131-02 14th Avenue in College Point, New York. (Compl. ¶ 22.) At all relevant times, C P Grill Corp. was identified as a domestic corporation, licensed to do business in New York. (Id. ¶ 21.) Patricia Bohman was identified as an officer, director, shareholder, and/or principal of C P Grill Corp. and as the individual with supervisory capacity and control over the activities occurring at C P Grill Corp. (Id. ¶¶ 17-18.) Plaintiff states that it never authorized defendants to broadcast the Program. (Id. ¶ 31; Pl.'s Aff. ¶ 9.) Plaintiff also alleges that defendants advertised the Program on social media prior to February 8, 2020, and "publicly performed the Program" for a financial benefit. (Compl. ¶¶ 7, 19, 23.) Plaintiff further alleges that an auditor hired by plaintiff visited C P Grill on February 8, 2020 from 10:02 p.m. until 10:48 p.m., and observed one flat screen television exhibiting a portion of the Program with an unspecified number of patrons present. (Affidavit of Rebecca King, sworn to June 22, 2022 ("King Aff."), attached as Ex. C to Pl.'s Aff., Dkt. No. 12-6.) The auditor additionally reported that she was not charged a cover fee to enter C P Grill on the night of the broadcast. (Id.) In her report, she estimated the capacity of the establishment to be between one and fifty patrons. (Id.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). In order to grant a default judgment, the court must ensure that the plaintiff took all of the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. As discussed above, plaintiff has demonstrated that it properly served defendants with the summons and complaint. Plaintiff has also demonstrated that it served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c). (See Certificate of Service of Alexander Z. Lonstein, Esq., filed June 28, 2022, Dkt. No. 13.)

### I. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id.

4

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also Yamashita v. Scholastic Inc., 936 F.3d 98, 104 (2d Cir. 2019). The first element of a copyright infringement claim can be satisfied "by the introduction into evidence of a Copyright Office certificate of registration." Sheldon v. Plot Commerce, No. 15 CV 5885, 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016) (internal quotation marks and citation omitted), report and recommendation adopted, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). In the Second Circuit, "a certificate of copyright registration is a prerequisite to asserting a civil copyright infringement claim." Sohm v. Scholastic Inc., 959 F.3d 39, 52-53 (2d Cir. 2020) (citing 17 U.S.C. § 411(a)). When introduced, a certificate of registration may serve as "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." Sheldon, 2016 WL 5107072, at *10 (internal quotation marks and citation omitted); see also 17 U.S.C. § 410(c). After the presentation of such a certificate, the burden of proof shifts to the defendant to prove the invalidity of the plaintiff's copyright; however, "in the context of a default judgment, a timely certificate is sufficient to establish validity." Korzeniewski v. Sapa Pho Vietnamese Rest. Inc., No. 17 CV 5721, 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019) (citations omitted), report and recommendation adopted, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019). In this case, plaintiff identified a copyright registration number for the Program in the Complaint (Compl. ¶ 4), and a search of the Copyright Public Records System confirms that the number is valid. Additionally, plaintiff attached the Copyright Office certificate of registration to the Motion for Default Judgment. (Copyright Certificate, attached as Ex. A to Pl.'s Aff., Dkt. No. 12-1.) Therefore, plaintiff has established the first element of a copyright infringement claim.

Next, plaintiff must establish that defendants copied parts of the work that were original. "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106." Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks omitted) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)). Those rights include the right "to distribute copies . . . of the copyrighted work," and the right "to perform the copyrighted work publicly[.]" 17 U.S.C. §§ 106(3), (4). Plaintiff has alleged that defendants violated its exclusive rights under 17 U.S.C. § 501 by publicly displaying the Program without proper authority or licensing from plaintiff to publicly exhibit the Program. As discussed below, because of the minimal burden required to establish infringement of original work, I find that plaintiff has also established the second element of a copyright infringement claim. I will address liability for each defendant separately.

A. C P GRILL CORP.

Plaintiff's allegations establish liability as to C P Grill Corp. under Section 501. Plaintiff held "the copyright and exclusive [b]roadcast and commercial distribution rights to commercial establishments for the UFC 247 Program, including all undercard matches . . . which occurred on February 8, 2020 via closed-circuit television, encrypted satellite signal and various streaming technologies . . . ." (Pl.'s Aff. ¶ 3.) Plaintiff alleges that C P Grill Corp infringed upon its exclusive rights of commercial distribution for public performance by showing the Program at C P Grill on February 8, 2020, without having entered into a licensing agreement with plaintiff to do so. (Id. ¶¶ 9-13.) Plaintiff provided an affidavit of an auditor who witnessed the Program being publicly displayed at C P Grill on February 8, 2020. (King Aff.) Courts have found similar allegations of public performance of a copyrighted work in a commercial

6

establishment without a license sufficient to establish a willful violation of 17 U.S.C. § 501(a). See, e.g., Joe Hand Promotions, Inc. v. Levin, No. 18 CV 9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019); Joe Hand Promotions, Inc. v. Maupin, No. 15 CV 6355, 2018 WL 2417840, at *4 (E.D.N.Y. May 25, 2018); Premium Sports, Inc. v. Mendes, No. 17 CV 1309, 2018 WL 2078488, at *4-5 (E.D.N.Y. Mar. 1, 2018). Therefore, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to C P Grill Corp.

B. Patricia Bohman

Plaintiff also seeks to hold Bohman liable under Section 501 in her capacity as officer, director, shareholder and/or principal of C P Grill. (Pl.'s Mot. at 6-7.) Plaintiff has provided no sworn testimony or documentation as evidentiary support for Bohman's alleged position with C P Grill, other than conclusory statements in the complaint. (Compl. ¶¶ 17-20.) Plaintiff does not allege that Bohman was present when the auditor entered the establishment on February 8, 2020. In contrast, the auditor noted the presence of a bartender and described him as "Hispanic male, brown hair, approx. 5'9.'" (King Aff.)

Furthermore, plaintiff seeks to hold Bohman responsible for the broadcast by virtue of her position as the individual with supervisory authority over C P Grill. (Compl. ¶ 18.) But corporate officers are generally not liable for the wrongful acts of the corporation "unless they participate in or have knowledge of such acts." Garden City Boxing Club, Inc. v. Paquita's Café, Inc., 06 CV 6953, 2007 WL 2783190, at *2 (S.D.N.Y. Sept. 26, 2007). I cannot infer from Bohman's alleged title that she was "positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation." J & J Sports Prods., Inc. v. Gomez, No. 18 CV 5119, 2019 WL 6388805, at *5 (E.D.N.Y. July 11, 2019), report and recommendation adopted in part, rejected in part on other grounds, 2019 WL 4744229 (E.D.N.Y.

7

Sept. 29, 2019) (quoting J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017)); see also J & J Sports Prods., Inc. v. Daley, No. 06 CV 238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) (holding that "[t]here is no evidence that [the individual defendant] had any knowledge that the Event would be exhibited … [or] that he had any control over what was being displayed on the television . . . .") (internal quotations omitted).

Therefore, I find that Bohman cannot be held liable under Section 501. Accordingly, I respectfully recommend that plaintiff's motion for default judgment be denied with respect to Bohman.

## II. Damages

Unlike liability, allegations regarding damages are not deemed to be admitted in the context of a default judgment. Greyhound Exhibitgroup Inc., 973 F.2d at 158. Plaintiff bears the burden of establishing that it is entitled to recovery. "To determine the appropriate amount of damages, courts have the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing." J & J Sports Prod., Inc. v. Newhouse, No. 06 CV 478, 2007 WL 1656283, at *2 (E.D.N.Y. June 4, 2007) (quotations and citation omitted); see also Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).

"In the default judgment context, a court has discretion to award a statutory damages amount that it feels just under the circumstances." Turn On Prods., Inc. v. Almost Famous Apparel, LLC, No. 18 CV 625, 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019) (citing Philip Morris USA Inc. v. 5 Bros. Grocery Corp., No. 13 CV 2451, 2014 WL 3887515, at *6 (E.D.N.Y. Aug. 5, 2014)). "Where there is little evidence to support the amount of damages

that plaintiff requests, courts often award far-below the statutory maximum and far-below the plaintiff's demand." Id.; see also Burberry Ltd. v. Euro Moda, Inc., No. 08 CV 5781, 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) ("Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue and defendant's profits is not in the millions of dollars.").

To determine a just award, courts in this circuit consider the following factors: "(1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof of profits and losses; and (7) the need to deter the defendant from future misconduct." Mattel, Inc. v. Arming, No. 18 CV 8824, 2021 WL 3683871, at *8 (S.D.N.Y. Aug. 18, 2021) (citing Spin Master Ltd. v. Allan Yuan's Store, 325 F. Supp. 3d 413, 425-26 & n.4 (S.D.N.Y. 2018)); see also 7-Eleven, Inc. v. Z-Eleven Convenience Store Inc., No. 16 CV 4116, 2018 WL 1521859, at *6 (E.D.N.Y. Jan. 17, 2018), report and recommendation adopted, 2018 WL 1466799 (E.D.N.Y. Mar. 26, 2018).

Section 504(c)(1) of the Copyright Act permits a prevailing plaintiff to choose between recovering actual damages or recovering statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Where the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). Plaintiff seeks statutory damages of $5,000 and enhanced damages of $10,000. (Pl.'s Mot. at 7-12.)

A. Statutory Damages

Because I recommend that plaintiff's motion for a default judgment against Bohman be denied, I will only consider the damages against C P Grill. C P Grill would have paid $866 for authorization to broadcast the program lawfully. (Pl.'s Aff., Ex. A.) The auditor noted that there was no cover charge to enter C P Grill on the night of February 8, 2020. (King Aff.) Plaintiff asserts that it has "suffered significant monetary loss in licensing fees due to the pirating of its programming and has expended a great deal of time and money in policing its signals to protect its interests." (Pl.'s Mot. at 9.) Further, plaintiff argues for damages as a means of deterrence, stating that such piracy puts businesses that follow the law at a "competitive disadvantage" compared to those that pirate events and, therefore, the sum of damages should be "significantly greater than the licensing fee." (Id.)

In determining a just award here, factors one and two are neutral, if not slightly in defendant's favor, because plaintiff has not provided evidence of the profits C P Grill earned or the losses plaintiff sustained, other than vaguely asserting the "undisputed erosion of commercial sales of proprietary programming . . . result[ing] from the piracy of programs and copyright violations by unauthorized and unlicensed establishments." (Pl.'s Aff. ¶ 16.) While a determination of statutory damages need not be tied to actual harm, plaintiff has made no effort to explain the reasoning behind the requested amount of $5,000 for one violation.

The third factor—the value of the copyright—weighs in plaintiff's favor. Plaintiff states that it "expended substantial monies in acquiring of the rights to transmit the Program to those entities that had contracted with Plaintiff." (Pl.'s Mot. at 6.) Additionally, plaintiff claims to have "invested substantial sums of money in marketing and promoting this Broadcast." (Pl.'s Aff. ¶ 17.) Thus, plaintiff has sufficiently established that the copyright is valuable. The fourth factor—the need to deter potential infringers— also weighs in plaintiff's favor. Plaintiff asserts

that "[t]he value of . . . selling commercial licenses to establishments that want to exhibit exciting events as they occur, is diminished when infringers and pirates steal them," arguing that infringers will continue to disobey the law until deterred by significant damages awards. (Pl.'s Mot. at 10.) Accordingly, plaintiff has set forth a persuasive argument that the need to deter potential infringers justifies an award of damages.

The fifth factor, which considers the willfulness of the defendant's conduct, also weighs in favor of plaintiff. Defendant's default substantiates plaintiff's allegation that defendant's conduct was willful. See Chloe v. Zarafshan, No. 06 CV 3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself.") (citations omitted). Thus, this factor is satisfied. Similarly, the sixth factor—the defendant's cooperativeness in providing information relevant to proof of profits and losses—weighs in plaintiff's favor, as defendant has not cooperated in the present action. (See Entry of Default, Dkt. No. 11.) The final factor—the need to deter the defendant from future misconduct—also weighs in favor of plaintiff. Given defendant's default, this court remains concerned that defendant might continue to infringe upon plaintiff's copyrights.

In recent cases with similar facts in this district, courts have awarded between $1,000 and $1,500 in statutory damages for the single unlicensed broadcast of a program. See, e.g., Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020) (awarding $1,000 in statutory damages under the Federal Communications Act for unauthorized display of UFC fight, where sublicensing fee would have been either $893 or $998, and the establishment collected a $25 cover charge); Maupin, 2018 WL 2417840, at *2, 9

11

(awarding $1,500 in statutory damages under the Copyright Act, as well as $1,500 under the Federal Communications Act, where restaurant should have paid $900 for a license, did not charge a cover fee, advertised the event on Facebook, and auditor noted seven people present during the broadcast).

I recommend that plaintiff be awarded $1,000 in statutory damages. Although this court has discretion to award more, this case is not particularly egregious. While defendant used Facebook to advertise the Program, it did not charge patrons for entrance and plaintiff has not specified how many patrons were present at the time of the broadcast. Additionally, plaintiff has not provided evidence of any profits earned by defendant or any losses plaintiff suffered as a result of the infringement.

B. Enhanced Statutory Damages

Plaintiff also requests $10,000 in enhanced statutory damages. (Pl.'s Mot. at 11-12.) Plaintiff contends that it does "not believe [a] Broadcast can be 'mistakenly or innocently' received or intercepted" (Pl.'s Aff. ¶ 12), and that defendant's willfulness is demonstrated by the advertising of the fight on Facebook. (Id., Ex. B.)

Typically, courts in this district award double or triple the statutory damage award as enhanced damages upon a showing of willfulness, depending on the circumstances and the defendant's culpability. See, e.g., Joe Hand, Inc. v. Dilone, No. 19 CV 871, 2020 WL 1242757, at *4 (E.D.N.Y. Mar. 16, 2020) (where one hundred patrons, charged a cover fee of $20 per person, were present as an unauthorized broadcast was displayed on six televisions, plaintiff was awarded $6,700 in statutory damages and $13,400 in enhanced damages under the Federal Communications Act, as well as $1,340 in statutory damages and $2,680 in enhanced damages under the Copyright Act, for a total of $24,120.); Maupin, 2018 WL 2417840, at *9 (doubling

12

the awarded statutory damages as a means of providing an enhanced damages remedy for willful infringement); Premium Sports, Inc. v. Mendes, No. 17 CV 1309, 2018 WL 2078488, at *10 (E.D.N.Y. Mar. 1, 2018) (same).[2] But see G&G Closed Circuit Events, LLC v. Lopez, No. 20 CV 2939, 2021 WL 8316286, at *5 (E.D.N.Y. Nov. 8, 2021) (awarding plaintiff $2,500 in statutory damages and no enhanced damages where the defendant would have paid $2,500 for lawful authorization to broadcast a prizefight, and no evidence was presented as to repeat violations or commercial gain).

Taking into account the deterrent effect on other potential infringers, the fact that defendant advertised the broadcast on social media, and defendant's lack of cooperation in this matter, I respectfully recommend that plaintiff be awarded $1,000 in enhanced damages. In recommending this amount, I have taken into consideration that plaintiff did not state how many patrons were in attendance, that defendant did not charge a cover fee or display the Program on more than one television, and that plaintiff has not provided evidence of repeated violations.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for default judgment be granted as to C P Grill Corp and denied as to Patricia Bohman, and that plaintiff be awarded $1,000 in statutory damages and $1,000 in enhanced damages under the

---

[2] Most cases involving an unauthorized broadcast are brought under the Federal Communications Act, which has a similar framework. In Federal Communications Act cases, courts analyze a number factors to determine whether a willful violation warrants the imposition of enhanced damages, including whether there is evidence of (1) repeated violations; (2) significant actual damages suffered by the plaintiff; (3) substantial unlawful monetary gains by defendant; (4) defendant's advertising of the event; and (5) defendant's collection of a cover charge or premiums for food and drinks. J & J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (quoting J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010)). I have considered this case law as guidance in determining enhanced damages.

Copyright Act, for a total of $2,000. Plaintiff is directed to serve a copy of this Report and Recommendation on defendants by first-class mail, and to file proof of service with the court. Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Kovner and my chambers, within fourteen days. Failure to file objections within the specified time may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

>                             Respectfully submitted,
>
>                             _____/s/_____
>                             ROBERT M. LEVY
>                             United States Magistrate Judge

Dated: Brooklyn, New York
      January 17, 2023